The question of identity was a matter for the jury. There is no rule of law which would have authorized the judge to instruct the jury that a prima facie case of identity was made out, and the plaintiff has no ground to complain of the charge. I think, however, that if the plaintiffs had been allowed the benefit of the testimony of Dr. DeRosset the jury could not have hesitated one instant in finding that (189) the John Whatson, to whom a grant was made covering the town of Wilmington in 1735, was the same individual as theJohn Watson who, in 1737, made a deed to Grainger for many lots, among others, the lot sued for, in the town of Wilmington; and if the plaintiff was entitled to the benefit of this testimony, there ought to be a venire de novo. I do not think that it is competent to prove by tradition and general reputation that a town is covered by a grant to A. B. That would be, in effect, to locate a grant merely by tradition and general reputation. The fact that a town is upon the land which a certain grant isalleged to cover can make no difference, and does not tend to prove the allegation. The object in this case was not to ascertain the boundaries of a town — it was admitted that the lot sued for was in the town — but to locate the grant. The existence of the town raises a presumption that the land was granted to some individual, but has no tendency to show who the grantee was.
The question, in my opinion, is settled by the case of Mendenhall v.Cassells, 20 N.C. 43. "The tradition must have something definite to which it can adhere, or be supported by correspondent enjoyment and acquiescence." "A tree may be shown to have been pointed out by persons of a bygone generation as the corner of an old grant or deed." The tree is something to which the tradition can adhere. "A field may be shown to have been reputed the property of a particular man, and to have been claimed, enjoyed and occupied as such." The occupation supports the tradition.
In that case, as in this, the old grant called for certain water courses and corners and lines, but the tradition did not refer to either, and therefore had nothing to which it could adhere; and many tracts of land had been long occupied within the supposed boundaries of the old grant, but the occupation was in nowise connected with the old grant, save by the tradition, which was held to be too loose a connection for a jury to act (190) upon. So, in this case, the grant which it was attempted to locate had no connection except by the tradition with the town, the boundaries of which were known. *Page 142 
I think, therefore, his Honor was right in holding the evidence incompetent as an abstract proposition. But there were circumstances in this case which, I think, made it competent for the purpose of establishing the proposition which it was necessary for the plaintiff to make out. It was admitted that the lot sued for was in the town of Wilmington. It appeared from the face of the grant that the grant included the town of Newton, and if, then, Newton and Wilmington were the same, the grant included Wilmington, and of course the lot. The proposition, then, which it was necessary for the plaintiff to make out was that Newton and Wilmington were the same. The effect of the testimony of Dr. DeRosset was to prove that fact, for as the grant, upon its face, included Newton, and Newton and Wilmington were the same, it got to be the tradition and general reputation that the grant included Wilmington.
It is perfectly clear that the names of mountains, rivers and towns may be proved by reputation; in fact, that usually is the only way in which names can be proved. So, a change of the name of a river or town may be proved in the same way; and it was clearly competent to show by tradition that the name of Newton had, many years before, been changed to Wilmington. But, in this case, there was, in truth, no occasion to resort to reputation to prove the change of the name, for the change was made by a public law, of which the court was bound to take notice. The name of Newton was changed to Wilmington by an act of Assembly, passed in 1756. Davis' Revisal, ch. 9, which was a public act, and established the boundaries of several counties, etc.
I am of opinion there ought to be a venire de novo.